**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 23-CV-60499-AHS**

MIKECO DESIR,
o/b/o Kevin Desir, Deceased,

     Plaintiff,

v.

SHERIFF GREGORY TONY, in his official and
individual capacity; RYAN DANIEL, in his
individual capacity; ANGELA MCNEAL, in her
individual capacity; KIMBERLY GREEN, in her
individual capacity; CHRISTOPHER WILLIAMS,
in his individual capacity; DEVON PARKER, in his
individual capacity; JEREMIAH HOWARD, in his
individual capacity; WELLPATH LLC, a foreign
limited liability company registered and doing
business in Florida; WELLPATH
MANAGEMENT, INC., a foreign profit
corporation registered and doing business in
Florida; ETUDE PETIT-HOMME DATUS, in her
individual capacity; JANE DOES #1-3, in their
individual capacities,

     Defendants.

_____/

## DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' COMBINED MOTION TO DISMISS

COME NOW the Defendants, SHERIFF GREGORY TONY ("BSO"); RYAN

DANIEL ("Daniel"); ANGELA MCNEAL ("McNeal"); KIMBERLY GREEN ("Green");

CHRISTOPHER WILLIAMS ("Williams"); DEVON PARKER ("Parker"); JEREMIAH

HOWARD ("Howard") (collectively the "Individual Deputies"); WELLPATH LLC

("Wellpath"); WELLPATH MANAGEMENT, INC. ("Wellpath Management")

(sometimes collectively referred to as the "Wellpath Entities"); ETUDE PETIT-HOMME DATUS ("Nurse Datus"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Southern District Local Rule 7.1(c), hereby reply to Plaintiff's Memorandum of Law in Response to Defendants' Combined Motion to Dismiss (DE 87) ("Response"), and state as follows:

**Plaintiff Misstates the Legal Standard for Dismissal Under Rule 12(b)(6)**

Plaintiff mischaracterizes the applicable legal standard for evaluating a Rule 12(b)(6) motion to dismiss. (DE 87, pp. 2, 20).  Plaintiff relies upon an old Supreme Court decision, *Conley v. Gibson*, 355 U.S. 41 (1957),[1] for the proposition that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (DE 87, p. 2).  Plaintiff's reliance on the "no set of facts" standard from *Conley* is misplaced, because the Supreme Court has determined that this "famous" language in *Conley* "has earned its retirement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  In *Twombly*, the Supreme Court stated that the "no set of facts" language "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.*  The Court indicated that when the *Conley* language is considered in its proper context, it "describe[s] the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a

---

[1] On page 20 of the Response, Plaintiff cites *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988), for this proposition, but the cited portion of *Thomas* is quoting *Conley*.

complaint's survival." *Id.* Thus, this Court's consideration of Plaintiff's Amended Complaint for purposes of the Defendants' Rule 12(b)(6) motion is not governed by the *Conley* standard. For the reasons set forth in the Defendants' Motion to Dismiss (DE 83) ("Motion") and in this Reply, Plaintiff's Amended Complaint does not satisfy the pleading standards articulated in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and, therefore, should be dismissed.

**Plaintiff Fails to Distinguish Between the Two Wellpath Entities**

Plaintiff attempts to dismiss the Defendants' arguments that the Amended Complaint fails to distinguish between Wellpath and Wellpath Management, asserting that he has "clearly alleged they both engaged in the same unconstitutional conduct and are joint constitutional tortfeasors in this action." (DE 87, p. 4). However, as in the Amended Complaint, throughout the Response Plaintiff simply lumps the two different entities together, without providing any factual or legal basis that would justify allowing Plaintiff to make blanket assertions against them collectively. Contrary to Plaintiff's assertions (DE 87, p. 3), his Amended Complaint is not sufficiently clear for either the Defendants or the Court to know which facts support which claims against the two distinct entities, Wellpath and Wellpath Management.

The cases Plaintiff cites (DE 87, pp. 4-5) do not support Plaintiff's argument that he need not allege facts particular to each of the Defendant entities. For example, in one of the cases Plaintiff cites, *Estate of Miller v. Cnty. of Sutter*, No. 2:20-CV-00577-KJM-DMC, 2020 WL 6392565 (E.D. Cal. Oct. 30, 2020), the court noted that the section of the complaint that described HIG (alleged to be an alter ego of Wellpath) and Wellpath "is

several pages and dozens of paragraphs long" and that there are "several pages of allegations illustrating how the plaintiffs intend to prove that the companies under the 'Wellpath' umbrella are not really separate from HIG." *Id.* at *6. The allegations in Plaintiff's Amended Complaint in this case are a far cry from the extensive allegations discussed in that case.

Plaintiff incorrectly asserts that "[t]here should be no confusion as to which entity's actions are at issue" (DE 87, p. 4) when Plaintiff does not distinguish between the two entities at all, other than in paragraphs 11 and 12 of the Amended Complaint, which merely identify them as separate legal entities that were formerly known as other, separate legal entities. Plaintiff does not attribute any particular alleged act or omission to one of the two different "Wellpath" entities. Many of Plaintiff's allegations also do not even distinguish between those Defendants and another Defendant, the Sheriff. (DE 55, ¶¶ 163, 166-168, 170-171, 173, 175, 183, 185, 196). Plaintiff's allegations are patently vague and confusing and fail to put each Defendant on proper notice of each of the claims against it and the putative facts that support each such claim.

### The Amended Complaint Incorporates *All* Allegations and Counts into Each Count

Plaintiff argues that a complaint that incorporates *prior* allegations by reference is not *per se* a shotgun pleading and repeatedly emphasizes "prior allegations." (DE 87, pp. 6-7). However, the counts in Plaintiff's Amended Complaint do not just incorporate by reference common preliminary factual allegations. *Cf. Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1358 (S.D. Fla. 2016) ("Plaintiffs' complaint does reference previously-asserted *facts* in each count, however that does not necessarily make it a

shotgun pleading in violation of Federal Rule 8.") (emphasis in original).   Rather, every single count in the Amended Complaint incorporates "every allegation of the Complaint"—that is, every single allegation and every single count/claim, including subsequent allegations and counts/claims. (DE 55, ¶¶ second 107, second 118, second 126, second 132, second 138, third 139, second 149, 162, 174, 184, 197, 204, first 215, 214). For the reasons discussed in the Defendants' Motion, this is a classic shotgun pleading. (DE 83, pp. 6-9). *See also Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (characterizing as a "shotgun" pleading a complaint in which "count two incorporates all of the allegations—including the causes of action—of count one, and count three, in turn, incorporates all of the allegations—including the causes of action—of counts one and two"). Plaintiff's manner of pleading is not merely a "technical pleading foible" (DE 87, p. 7); as noted above and in Defendants' Motion, Plaintiff has not put each Defendant on notice of what it has alleged to have done or not done.

### The Plaintiff Failed to Generally Aver Satisfaction of Conditions Precedent

The Plaintiff has responded to the Defendants' conditions precedent argument by acknowledging that the Plaintiff failed to allege satisfaction of conditions precedent and factually asserting that the Plaintiff has complied with the pre-suit notice requirement of Fla. Stat. § 768(6)(a) and otherwise addressing requirements under this specific statute. [DE 87 pp. 7-8]. First of all, the newly asserted facts do not save the day because "the Court cannot consider facts in the response memorandum." *Valdes v. Fisher Safety*, 12-60034-CIV-MARRA, 2012 WL 1405685, at *3 (S.D. Fla. Apr. 23, 2012) (citing to *St. George v. Pinellas County,* 285 F.3d at 1334, 1337 (11th Cir. 2002).

Moreover, Plaintiff misses the bigger picture. Though the Defendants did identify one specific condition precedent in their motion [87 at ¶ X(b)], Defendants have also asserted a pleading deficiency for failure to comply with Rule 9(c) by not even generally making any reference whatsoever that all conditions precedent have occurred or been performed. [DE 83 at p. 12]. The Plaintiff does not directly address this failure in terms of a pleading deficiency in the response.

### Plaintiff Has Failed to Sufficiently Allege A Wrongful Death Claim

In its response, the Plaintiff tries to have it both ways. On the one hand, it asserts that the complaint "is sufficiently clear for all Defendants and the Court to know which claims are being asserted against which Defendants and which facts support those claims." [DE 87 p. 3]. But on the other hand, the Plaintiff vacillates as to which defendants are being sued for which claims whenever it suits them.

Specifically, in argument II of its response, the Plaintiff states, "If allowed to amend[2] to include BSO as a defendant for the wrongful death claim" then further alleges that Plaintiff "would" sue BSO and the statute therefore "would" be inapplicable, directly implying that there is not currently a wrongful death claim against BSO. [DE 87 p. 8]. This is a complete deviation from argument III of the response, where the Plaintiff glosses over the statute of limitations argument by asserting that because it is bringing the action against a sovereign entity, the four-year statute applies [DE 87 p. 9]. Meanwhile, the

---

[2] There is no motion to amend the complaint pending, and there does not seem to be a formal request imbedded within the response to be given leave to amend.

complaint itself purports that the wrongful death claim is brought just against the Individual Deputies.[3]

In fact, neither of the Plaintiffs' positions taken in the response support allowing Count 14 to stand.  An argument of what statute of limitations period hypothetically would apply to BSO if such a claim had been brought against the agency is wholly irrelevant to the Individual Deputies.  Moreover, the paragraph in the complaint where the Plaintiff avers the decedent was survived by "two young girls" falls woefully short of the statutorily required identification of "all potential beneficiaries . . . including the decedent's estate." *See* Fla. Stat. § 768.21.

The Plaintiff offers nothing to rebut that the wrongful death claim was made outside of the two-year statute of limitations applicable to the non-sovereign, Individual Deputies. Similarly, though the Plaintiff acknowledges the Individual Deputies' immunity argument as to the wrongful death claim [DE 87 p. 2], it fails to substantively address the argument within the body of the response.  Count 14 should be dismissed.

### Argument re: Claim Against Datus

Plaintiff's arguments in the Response regarding the deliberate indifference claim asserted against Nurse Datus (DE 87, pp. 10-14) highlight the need for Plaintiff to refrain from pleading his claims in a shotgun manner.  For example, Plaintiff cites and relies on many allegations in the Amended Complaint that do not reference Nurse Datus by name

---

3 Truly, if anything is demonstrative of the vague nature of the allegations as to which claims are being asserted against which Defendants, it is the Plaintiff's own response in defense of the complaint.

and do not reasonably imply knowledge or involvement by Nurse Datus. (DE 87, p. 10 (citing DE 55, ¶¶ 17, 18, 21, 22, 24-28, 30, 33-41, 43-52)). Indeed, Plaintiff states that he "is not required to alleged whether Defendant Datus knew the specifics of Mr. Desir's medical history." (DE 87, p. 11). However, the Eleventh Circuit has made clear that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference" and "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Contrary to Plaintiff's assertion that he "has pleaded ample facts demonstrating Defendant Datus had actual, subjective knowledge of Mr. Desir's serious medical needs" (DE 87, p. 12), again the allegations cited in support of that argument (other than paragraph 42 and paragraph 52, which states that Nurse Datus "returned," implying she had left) do not reference Nurse Datus or imply her personal knowledge or involvement. (*See* DE 83, pp. 14-15).

## Defendants Did Not Argue a Heightened Pleading Standard Applies to § 1983 Claims

Plaintiff correctly notes that the Supreme Court rejected a "heightened pleading standard" for claims of § 1983 municipal liability in *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163 (1993). However, Defendants did not argue that any heightened pleading standard with respect to Plaintiff's putative *Monell* claims. Since the 1993 *Leatherman* opinion, the Supreme Court has clarified the generally applicable pleading requirements under Rule 8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and numerous cases have

000182/01488294_1

8

considered whether complaints allege sufficient facts to establish a plausible claim for relief under the Rule 8 pleading standard, as clarified by *Twombly* and *Iqbal*. *See, e.g.*, *Marantes v. Miami-Dade Cnty.*, 649 Fed. Appx. 665, 673 (11th Cir. 2016) (affirming dismissal of a *Monell* claim involving conclusory allegations). In *Pierre v. City of Miramar, Fla., Inc.*, 537 Fed. Appx. 821 (11th Cir. 2013), for example, the Eleventh Circuit affirmed dismissal of a § 1983 municipal claim where the plaintiff alleged that the city had a policy or custom of failing to enforce the requirement that officers have probable cause for an arrest, permitting officers to turn a blind eye to easily discoverable evidence in determining whether probable cause exists, and failing to train or supervise officers. *Id.* at 826-27. The court determined that the plaintiff "alleged no facts supporting the existence of these purported City policies" and concluded that dismissal was proper. *Id.* In the present case, Plaintiff's Amended Complaint fails to allege sufficient facts to state *Monell* claims against the Defendants under the pleading standards established in *Twombly* and *Iqbal*, as discussed in depth in Defendants' Motion. (DE 83, pp. 16-30).

### Plaintiff Has Not Sufficiently Alleged a Policy, Practice, or Custom

Plaintiff's vague and conclusory allegations regarding policies, practices, or customs do not include facts involving prior, similar incidents. Although Plaintiff argues Defendants construe the similarity requirement too narrowly, to the extent Plaintiff implies he can state a *Monell* claim based on dissimilar incidents, he is incorrect. *See Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 2333265, at *4 (S.D. Fla. June 8, 2021) ("Random acts, isolated incidents, or *dissimilar complaints are insufficient to establish a custom or policy*. … In order to survive dismissal on each § 1983 claim against

the City, then, [the plaintiff] must allege other incidents, occurring on a widespread basis, *involving factual situations that are substantially similar to the facts alleged in the case*.") (emphasis added).

As discussed in Defendants' Motion, the four instances alleged in paragraphs 121, 122, and 124 of the Complaint, two of which are described in conclusory fashion and one of which post-dates the subject incident, are factually dissimilar from the facts alleged pertaining to the subject incident. (DE 83, p. 19). The other allegations Plaintiff relies on in the response (DE 87, p. 17) likewise fail to establish a policy, practice, or custom for the reasons already stated in Defendants' Motion (DE 83, pp. 18-21). Plaintiff relies heavily on *La Bruno v. Miami-Dade County*, No. 10-22554-CIV, 2011 WL 1103783 (S.D. Fla. Mar. 23, 2011), but in that case, the plaintiff alleged ten incidents—which the court characterized as a "comparatively low number of incidents to establish a pattern." *Id.* at *6. Moreover, the plaintiff in *La Bruno* alleged similar incidents and in greater detail than Plaintiff does in this case. *See id.* at *1-3. In addition, the court in *La Bruno* found that only one of the plaintiff's sub-theories of liability under § 1983 was sufficiently supported by the alleged facts. *See id.* at *8. The court specifically found that the plaintiff had not alleged facts sufficient to establish a widespread and longstanding practice based on additional sub-theories, including the theories that the defendants failed to remedy or permitted a pattern of denial of medical care by:

> (ii) failing to adopt and/or enact reasonable written rules, regulations, protocols, standards, or other guidelines pertinent to the diagnosis, care, and treatment of inmates with serious medical needs; (iii) failing to adequately attend, supervise, monitor, educate, and follow inmates with serious medical needs; (iv) failing to hire and retain competent and knowledgeable medical

staff and ensure that only competent and knowledgeable medical staff were assigned to positions providing care to inmates with serious medical needs; (v) failing to provide appropriate and sufficient training and education for its medical personnel in regards to inmates with serious medical needs; and (vi) failing to discipline or prosecute known instances where medical treatment was being denied to inmates with serious medical needs.

*Id.* at *9.  The court also rejected the plaintiff's under-staffing theory, finding the plaintiff had offered only a "conclusory allegation without any underlying facts to support his assertion." *Id.*  Plaintiff's allegations pertaining to alleged policies, practices, or customs are similar to those the court rejected in *La Bruno* and are similarly deficient.  Moreover, as already noted, Plaintiff fails to attribute any particular alleged policy, practice, or custom to either Wellpath or Wellpath Management or, in some cases, either "Wellpath" entity or the Sheriff.

Plaintiff emphasizes the number of lawsuits filed (without indicating against which entity or with respect to which facility(ies)).  (DE 87, p. 18).  However, there are no facts alleged to establish that they were meritorious or even involved Wellpath or Wellpath Management or either entity's employees or whether they involved medical or mental health care and treatment at Broward County jail facilities or the North Broward Bureau (NBB).  (*See* DE 83, p. 18 n.10).

### **Plaintiff Has Not Sufficiently Alleged a Failure to Train, Supervise, or Discipline**

As noted above, Plaintiff cannot rely on the now rejected *Conley* language to salvage his claim of failure to train, supervise, or discipline.  (DE 87, pp. 10-20).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrated deliberate indifference for purposes of failure to train."  *Connick v.*

*Thompson*, 563 U.S. 51, 62 (2011) (internal citations omitted).   Contrary to Plaintiff's assertion in the Response, Plaintiff has not alleged facts supporting "Wellpath Defendants' history of failing to provide adequate mental health and medical treatment, including a pattern of similar past incidents and recent incidents."  (DE 87, p. 20; *see* DE 83, pp. 23-24).   Plaintiff's allegations regarding isolated, dissimilar incidents, coupled with conclusory assertions, are insufficient to state a claim.  *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (stating that to satisfy pleading standard, plaintiff "is required to allege specific facts detailing a widespread policy or custom, not just a couple of incidents and a conclusory assertion").

Plaintiff claims he has pled sufficient facts to establish that the "Wellpath Defendants" were deliberately indifferent in failing to provide sufficient training to "its" employees on "areas that obviously require training."  (DE 87, p. 20).  However, Plaintiff has not pled such facts.  For example, Plaintiff fails to allege whether Wellpath or Wellpath Management employed the individual Defendants, and Plaintiff fails to allege facts establishing any prior incidents or prior acts or omissions by any alleged employee of either of the "Wellpath" entities that would have put such entity on notice of the need for training or supervision.   Plaintiff's reliance on *Gonzalez v. Israel*, No. 15-CIV-60060-BLOOM/Valle, 2015 WL 1143116, at *14 (S.D. Fla. Mar. 13, 2015), and *Wilson ex rel. Estate of Wilson v. Miami-Dade Cnty.*, No. 04-23250-CIV-MOORE, 2005 WL 3597737, at *4 (S.D. Fla. Sept. 19, 2005), is misplaced, as both of those cases involved allegations of other incidents of similar conduct by a particular individual employee which supported the theory that the employing entity failed to train or supervise the employee.

## **Plaintiff Has Not Sufficiently Alleged Deliberate Indifference by a Final Policymaker**

It is not clear from the Amended Complaint whether Plaintiff is attempting to impose liability on Wellpath and Wellpath Management based on a final policymaker/delegation theory, separate and apart from Plaintiff's other putative *Monell* theories. Plaintiff's Response (DE 87, pp. 14, 21-24) does not bring clarity regarding this issue. Plaintiff argues, for example, that "it is a prison official, rather than a policymaker, who needs to know of the harm and disregard it." (DE 87, p. 21). However, entities such as Wellpath and Wellpath Management cannot be held liable under *Monell* based on a respondeat superior theory. To find an employer liable based on deliberate indifference, Plaintiff must allege that a failure to train was deliberately indifferent (already addressed above) or that a final policymaker of the employer was himself or herself deliberately indifferent. Even if Plaintiff had alleged facts sufficient to establish that, for example, Defendant Datus "had a subjective harm and she disregarded it" (DE 87, p. 22), that would not support a deliberate indifference claim against Datus' alleged employers, Wellpath and Wellpath Management. Plaintiff appears to inject new allegations regarding "[t]he policymaker at Wellpath" (DE 87, p. 22), but new allegations in a response cannot be considered on a motion to dismiss and there are no allegations in the Amended Complaint about a "policymaker at Wellpath" (whichever entity that is supposed to refer to). Plaintiff also refers to "specific Wellpath Defendants' policies" (DE 87, p. 23), but Defendants have already addressed Plaintiff's policy allegations in the Motion and in this Reply, and Plaintiff has not alleged in the Amended Complaint that the actions of any particular

employee or "policymaker" of Wellpath or Wellpath Management constituted an official policy.  While Defendants agree that Plaintiff is not necessarily required to specifically identify or name a policymaker in the Complaint to avoid a motion to dismiss, Plaintiff is required to allege facts sufficient to state a claim based on a final policymaker/delegation theory if that is what the Plaintiff intends to do.  *See, e.g.*, *Viera v. City of Lake Worth, Fla.*, 853 Fed. Appx. 356, 359-60 (11th Cir. 2021); *Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1223 (S.D. Fla. 2007).  For the reasons discussed in Defendants' Motion, Plaintiff has not done so.  (DE 83, pp. 24-26).

## Plaintiff Has Failed to Sufficiently Allege A § 1983 Claim Against BSO

Just because the Plaintiff has brought a long-winded, 233-paragraph complaint does not mean that the allegations themselves have sufficient substance.  Likewise, just because a response to a motion to dismiss repeatedly attempts to point to specific paragraphs in the complaint does not imbue the pleading with meaning.

Off the bat, the Plaintiff dismisses the Defendants argument that allegations based upon "information and belief" are not entitled to the assumption of truth.  [DE 87 p. 24]. Notably, the Plaintiff does not address the cited case law from the Eleventh Circuit cited in support of the argument, nor does the Plaintiff offer its own authority to the contrary. Rather, the argument is mischaracterized as an attempt to apply a heightened pleading standard for the *Monell* claims, which just simply is not accurate.  The Court should reject the Plaintiff's position.

Moreover, in order to avoid dismissal of its § 1983 claims against BSO (Counts 8, 9, and 10), the Plaintiff attempts to identify multiple paragraphs in the complaint that

supposedly allege a policy, practice, or custom that resulted in injury in the form of a constitutional violations sufficiently.  [DE 87 at V].  But a close reading of the complaint behind the lengthy puffery reveals the allegations are general and do not connect a policy to a constitutional violation.

While there is an allegation that BSO is subject to a consent decree from the 1970s requiring BSO to meet various mental health standards [DE 55 ¶ 101], there is no allegation that BSO fell short of any of those specific health care standards.  Rather, the Plaintiff makes a slew of other allegations- either conclusory statements of a supposed history of constitutional violations or identifications of practices unrelated to or tied into a constitutional violation.  For example, there is no basis to conclude that involving "mental health clinicians in its security staff's attempt to deescalate crises" constitutes inadequate medical care rising to the requisite level applicable here.  [DE 55 ¶ 82].

As argued in the motion to dismiss, Plaintiff has failed to offer ultimate facts that BSO maintained an officially promulgated policy or an unofficial custom or practice through repeated acts of the final policymaker to allege constitutional violations that resulted in injury to the Plaintiff.  [DE 83  p. 26].  Counts 8, 9, and 10 should be dismissed.

**Plaintiff Has Failed To Suffiently State An ADA Or RA Claim Against BSO**

The Defendants rely on their arguments and cited supporting authority already made in the motion to dismiss as to the ADA and RA claims.  However, the following statements in the Plaintiff's response need to be factually addressed.

Citing to paragraphs 82-83 of the complaint, the Plaintiff claims it "alleged that universal guidance and expert recommendations specific to BSO informed individual

officers that Mr. Desir needed an accommodation to comply with their orders—namely a mental health clinician to assist in de-escalation." [DE 87 p. 33]. Respectfully, this is an inaccurate description of the allegations contained in the cited paragraphs. In fact, what the Plaintiff states is:

> 82. BSO does not involve mental health clinicians in its security staff's attempts to deescalate crises where an individual's disruptive or combative behavior is a manifestation of a condition or mental illness.

> 83. BSO does not have a policy of involving clinicians in disciplinary decisions where an individual's behavior is a manifestation of a condition or mental illness.

[DE 55 at ¶¶ 82–83] (footnotes omitted). No mention is made of universal guidance or expert recommendations specific to BSO required the presence of a mental health physician.

Furthermore, the Plaintiff vaguely alleges in paragraph 65 of the complaint that "there is a broad consensus that pepper spray should not be used against individuals who are in mental health crisis" with a footnote citing a white paper published by the Police Executive Research Forum and a hyperlink directly to the report. However, what cited authority actually states is:

> OC spray can be difficult to control, but it works in some situations: Traditional OC sprays require fairly close proximity to the subject, and the spray tends to spread across large areas. Depending on wind and other factors, a deployment can impact both police officers and subjects. (See page 28 for information on how Police Scotland is attempting to address this issue with the use of PAVA spray.)

> There is also a widely held belief that OC spray is not effective on people who are intoxicated, under the influence of substances such as PCP, or in a mental health crisis. However, members of the Vancouver, British Columbia

Police Department reported that OC spray is the most effective of the intermediate less-lethal weapons used by that agency.

*See* Chuck Wexler, "The Evolution of Less Lethal Weapons," Refining the Role of Less Lethal Technologies, Police Executive Research Forum (2020) at 19, available at https://www.policeforum.org/assets/LessLethal.pdf (as cited by the Plaintiff).  In both context and substance, this does not support the Plaintiff's claim that BSO was aware of an obvious need for an accommodation.

Finally, citing to paragraphs 27-29 of the complaint, the Plaintiff contends it alleged that the decedent was "not receiving medical treatment for his bipolar and schizoaffective disorder conditions."  [DE 87 p. 33].  In fact, what those cited paragraphs state is:

27. Wellpath staff notes over the course of these three days indicate that Kevin had not been eating meals, "refused" to be interviewed for a mental health assessment, and "appeared to be responding to internal stimuli."  The notes also indicate that Wellpath staff "did not engage" Kevin on January 15 or January 17 but note that his condition was worsening.

28. BSO staff similarly reported that Kevin "refused" medicine and meals from January 15 through January 17.

29. In accordance with Kevin's existing mental health treatment plan, which Wellpath staff learned about during his psychiatric screening on January 14, he should have been receiving treatment and medication for his mental health conditions.

[DE 55 at ¶¶ 27-29].  To the extent the Plaintiff argues these paragraphs establish that the decedent's refusal of medical care constitutes a failure of BSO to accommodate an obvious need under the ADA or the RA, the Plaintiff is again mistaken.  Counts 12 and 13 should be dismissed.

**Punitive Damages**

As noted by the Plaintiff in its response, the Defendants did not argue that the Individual Deputies, Nurses, and Wellpath Defendants did not argue that the Plaintiff is not entitled to seek punitive damages as a matter of law at the motion to dismiss stage. However, the Defendants did argue that Plaintiff is not entitled to recover punitive damages against BSO, and the Plaintiff has conceded the issue.  [DE 87 p. 33].

**CONCLUSION**

For the above reasons, and those set forth in the Defendants' Motion (DE 83), Plaintiff's Amended Complaint (DE 55) should be dismissed as against the Defendants.

Respectfully submitted this 4th day of December, 2023.

**BILLING, COCHRAN, LYLES, MAURO & RAMSEY, P.A.**
Las Olas Square, Suite 600
515 East Las Olas Boulevard
Fort Lauderdale, FL  33301
Tel: 954-764-7150
*Attorneys for Wellpath LLC, Wellpath Management, Inc., and Etude Petit-Homme Datus*

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Ft. Lauderdale, Florida 33301
Telephone No.: (954) 525-4100
*Attorneys for BSO, Ryan Daniel, Angela McNeal, Kimberly Green, Christopher Williams, Devon Parker and Jeremiah Howard*

By: */s/ Jeffery R. Lawley*
Jeffery R. Lawley, Esq.
Florida Bar No. 0596027
Email: jrl@bclmr.com

By: */s/ Alexis Fields_____*
ALEXIS FIELDS
Florida Bar Number: 95953
Fields@kolawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of December, 2023, I electronically filed

a true and correct copy of the foregoing with the Clerk of the Southern District of Florida,

by using the CM/ECF system.

By: */s/ Alexis Fields* _____
ALEXIS FIELDS
Fla. Bar No. 95953
fields@kolawyers.com